Taylor, C. J.
I ought to distrust the correctness of the opinión I am about to deliver, when I perceive that it differs from that of all my Brethren, in relation, to the prisoner Lovet. But as I haye examined: with attentioji all the cases cited, and cannot see my way clearly, in any other direction, I feel it to be an indispensable duty to pronounce the ’best results my own understanding will enable me to arrive at. These are, 1st, that the evidence against Lovet vras too slight and unsatisfactory to audio* rize his conviction ; and that even in a common question of property, a verdict so found ought to have been set aside. 2. That if, upon any view of the testimony', the verdict against Lovei czxi be sustained, he is nevertheless entitled, under a fair construction of the Act under which *56 he is indicted, to the benefit of clergy. I will give the reasons which have led me to these two conclusions, and will afterwards speak to some minor points in the case.
1. The natural divisioii of the testimony is, into those circumstances which took place before Pender had been made acquainted with the transaction, and consented to it; and those which occurred afterwards. If nothing but the latter class had been proved against either of the Prisoners, I think they ought both to have been acquitted, on account of, the assent oí-Pender ; and I take this opportunity of expressing my entire concurrence with the doctrine laid down in Daniel's case.* ' These latter circumstances can only affect the Prisoners by way of evidence, so far as they can be connected with proofs of guilt existing before Pender's consent was given; and I agree, if any thing be proved before that time, which implicates Lovet in the crime of stealing or seduction, his subsequent conduct of carrying the slaves to Smithjteld bridge, may properly be connected with such proof. But beyond this point, I do not feel justified in proceeding. If Lovet was not a guilty man before Pender consented to the larceny, I cannot agree that he shall be considered so afterwards.
In considering the testimony, I cautiously abstain from drawing any inferences from the facts stated.—that is the province of a Jury. I take them nakedly as they are exhibited in the record, which is drawn up with much care.
The first of the Defendants who appears is Barna, Who told Deans that he had the negroes lyjng out, and expressed a wish that Deans would assist him in carrying them away. Five days afteryvards, Deans met Lovet, w,ho merely delivered a message top Deans, that Barnet wished to see him.
*57 Lovet did not say that he had negroes lying out, or thát he-knew they were lying out, or that¡he wanted assistance to carry them to the southward. Hé did not, in, short, htíet á single word abotit hegrdesi
When, in consequence of this message, Beans went to Rama's house, whom did he see there ? Not Lovet, but Barna, whb Informed him that three of the negroes were put, and the rest he cbiild get Out at any time. Upo& this occasion, Barrid agreed to meet the witness at a saléí and when afterwards they met there, BaMa informed him that three of the negroes were not out, but he would, let him know when they would be ready to start, if hé Would meet him at Wdynesborough on the 22d. Barh'a did not attend at the day; but Lovet appeared, and for the first time, spoke with Deans about the pegroes; but did not, in my opinion, say any thing which can justly fasten upon him the guilt of stealing* of Seduction, or even a knowledge of either. “ He was to go with Deans and the negroes to the south but whether he was about to do right or wrong, whether Barna acquired the negroes feloniously or otherwise, it does not appear that he knew» At this tithe, Beans sent a message by Lovet to Barna, that the latter must meet him át M' fcinne's mill. But Deans did not charge Lovet to accompany Barna, nor did he hold with him that sort of free communication and disclosure, that confidential intercourse, Which would seem to be natural, in a case where Deans believed that Lovet had been privy to the felony, or aided ih it. He did not* in short, Unbosom himself to him further, than he might safely do to a man who was employed to carry negroes to the southward, without knowing whether the possession was fair or fraudulent.-
But the case states that they met at the mill, t ask did Lovet meet ? He was not requestSd to do so by Beatify who expressly said, he (Barda) must meet rae (not us) *58 at M’Kinne’s mill, Barna met him (not them) áftd then they agreed that the negroes were tobe sold and divided betWeeri¡ the three 5 átid that they were to be delivered at a mill-stream of Mrs. Boon’s, on the 24th of March, Mien Deans was to receive them, and with Lavet, to convey them to the southward. - : * ■'
No construction of this part of the case, will warrant the conclusion that Lovet was present at this meeting, or any party to the agreement, relative to the sale of the ne-groes and the division of the money. If I have read the record,aright, it states that the Defendant, in the singular number, knew the negroes to be Pender’s. Which of the Defendants, or at what time he knew it, whether before Pender’s assent, or ¿fterwards, it does not specify.
After this period, the aSsent of Pender was given j and as in my opinion, all the the testimony against Lovet before that time, is, without straining or refinement, susceptible of a construction which leaves his guilt unproved} it ought to receive it.
2. The Prisoner is indicted under the Act or 1779, c. 7, whicli makes it a capital felony to steal a slave ; and the enquiry I shall now make, is, Whether, upon, the supposition that was present, aiding and abetting Barna, but not having actually stolen the slave himself, he shall be entitled to the benefit of clergy.
In a question of so much delicacy and importance, connected with the criminal law of the country, and with that part of it too which denounces the punishment of deaths I know that á Judge should take every step with, the utmost caution, and advance no prihciple which he is unable to produce the best authorities in support of; for as hi* province is jus dicere etnon dare> it is only by an inflexible adherence to wha^the law has declared, and by reasoning from well established principles, that he can contribute to that harmonious movement of the different *59 powers of Government, which forms the essence of Civil liberty.
In the correctness of the principles which I shall lay do\ym I have the utmost confidence, because they-are derived from the most authoritative sources; my reasoning from tffem may be erroneous, and on this point I cannot competently judge,
1. That where clergy is taken away from the principal, it is not of course taken away from the accessory, unless he be also included, in the words of the statute.*
2. That where it is only taken away from the person committing the offence, as in the case of stabbing, or committing larceny ,in a dwelling-house, or privately from the person, his aiders and abettors are pot excluded.†
3. But when the benefit of clergy is taken away from, the offence (as in case of murder, buggery, robbery, rape, and burglary) a principal in the second degree, being present, aiding and abetting the crime, is as well excluded from the clergy, as he that is. principal in the first degree.
.The two first principles will, I think, be found to apply to the Case under ccnsideration, and to furnish th*rule by which it ought to be decided. I have cited the last for the purpose of shewing, that the Act of Assembly under which the Prisoners are indicted, extends only to the persons committing the offence, and not to, the offence itself.
Persons who are present at the commission of a felony, and aid and abet the principal felon, are, at common law, punishable in the same manner with the principal, because they are cohsidered principals in the second degree. But they were formerly considered in the light of accessories ; a notion which ^gradually yielded to considerations of the justice and propriety of bringing them to trial while the fact was recent and susceptible of proof, instead of waiting for the conviction of the principal. They are *60 therefore considered as principals for many purposes, ancj especially for all the purposes of punishment, by the common law. ^
Put when statutes began to be passed creating neyrfei Ionics, or aggravating the punishment of felonies then'ex-jsting, Judge's were called upon to pause and reflect, by the rule of law which demands a strict construction of penal statutes, fhe question wás directly put to them* Shall he be condemned to death, whose offence is not specifically described in the Act; jjpd who is only a principal by a sort of legal fiction, invented for the furtherance of* justice, and adopted without any foresight, that the name 'given to, and%e character vested in him, would subject him to a severer punishment by any law thereafter to be passed ? ! '
Let us see how they answer this question in the first case that occurred. The statute of Eliz- 39, c. Í5, enacts tha. clergy shall not be allowed to any that feloniously takes away any thing in the day-time amounting to the va'i lue of 5s. out of any dwelling-house or out-house, albeit no person be within or pear the same, Evans and Finch Were indicted under this statute, and it appeared in evidence that Egans, by a ladder, climbed to the upper part of the window and took out the money ; and that Finch stood upon the ladder, in view of Evans, and saw him enter into the chamber, and was assisting and helping hint in the robbery, and took part of the money. It was adjudged that Finch should have his clergy, because it was taken away only from the person offending, and not from the offence.*
If in that case Finch had been indicted at common law, he would have beén considered a principal in the second degree, and punished in the same manner with Evans ; but because the statute did not particularly describe the pa£f; he took in the felony, he was entitled to clergy.—⅛ *61 The statute speaks of a stealing in the house, therefore he that stpaleth, or is a party to the stealing, being out of the house, is not ousted of clergy * It is equally clear, that m the construction of law, the entry of Evans was the entry of Finch ; but because the Court were giyiiig á struction t^a statute highly penal, they would give it no other than a strict and literal one. Aiders and abettors were neither named nor described in it, and therefore they should not be punished under it.
The construction which has been put upon the statutes' of stabbing, is much in point to establish the same doctrine. Wherever persons are present, aiding and abetting him who makes the thrust, they shall be entitled to clergy ; although if indicted for manslaughter at common law, they would have been principals in it.
All the feasons given jn support of these decisions, do, ip my opinion, apply with the utmost precision, to the , Act of Assembly under which these Prisoners are indicted. “ Any person or persons who shall hereafter steal, or shall, by violence, seduction, or any other means, take,” &c. It does not describe the offence of an aider or abettor, any more than the statutes of Elizabeth, or those of stabbing ; it is as penal as any other law, and describes an offence, part of which was felony at common law ; it takes away the benefit of clergy from the offender., and not from the offence, and bears a near resemblance to the statute on which Innis was indicted.† For that was made to punish stealing in a particular manner, viz. privately from the person, and it takes away clergy from those who are found'guilty of the offence. So the Act of Assembly under consideration, designed not merely to increase the punishment of stealing a slave, which was a felony at common law, but it extended beyond this, and punished with death other modes of taking away slaves, which, in-my opinion, wfere pot felonies at common law ; *62 for a taking by violence, does not necessarily imply a féi ionious taking, unless ii be violence to the person of the °wner ; Nor would taking a slave upon a claim bf right, -amount to felony ; for if there wej-e any fair pretence of property in the prisoner^ or it "be brought into doubt, at all, the Court will direct an acquittal.*
The occasion of passing this Act of Assembly, is men* tioned by an eminent Judge, who was in active lile at that period, audit appears from thence, that it was intended to repress a variety of new modes of taking slaves, which had grown out of the turbulence of the times, “• under pretence that they belonged to the public as confiscated, or that they were owned by disaffected persons or the like.”† From these considerations, I think it appears, without any strained inference or forced construction, that part of the object of the Act of Assembly, wasj to take away clergy from larcenies of slaves, under particular circumstances ; and if so, it comes within the reason of all the cases where clergy has been allowed ■ ai(jers and abettors, when not named in a penál statute.‡
3. On the last position I have laid down, it is unnecessary to make many remarks, because if any thing is proved by what I have before said, it is, that the Act of Assembly does not take away clergy from the offence, but from the offender. The statutes which oust clergy in murder, robbery, &c. have received a different construction, because the Legislature made use of terms, which at the time of making the Acts and long before, were well known to include aiders and abettors. The offences called murder, robbery, burglary, &c. are technically so described, and aiders and abettors were liable, when the statutes were passed, to be convicted as principals in,them. But taking a slave by “ violence, seduction, or any other means,” &c. was not a technical description of any offence known before the passing of the *63 Act; and, therefore, he alone who takes or seduces, not he who aids and abets, is liable to the punishment of death under it. ,
The Charge of the Judge has been objected to, because it used the words present, aiding, and consenting; and it has been intimated, that the Jury might have been misled by that circumstance. I do not think the Charge exceptionable in that respect; though I admit it is always most safe to employ the established terms of the Law, to which the wisdom of ages has given sanction, and usage a popular and explicit meaning. We are not, however, to be governed by the sound of words, but by their true legal import. Even in drawing indictments upon penal statutes, in which the Law particularly requires strictness, it is not essential to follow the very words of tfie statute, provided words of equivalent import are used. To consent, signifies “ to co-operate to the same end,”* and a person who does so, and is also present and aiding, could not well be injured by the language used by the Judge.' Lórd Coke, in commenting on the statute West. 1, in explaining the words commandment and aid, as applied to accessories before the fact, says, “ under this word command, are understood all those who incite, procure* set on, or stir up any other to do the fact; and under the word aid, are comprehended all persons counselling, abetting, plotting, assenting, consenting, and encouraging to do the act, and not present when the act is done.” So that a person who consents, though not present, is an aider: “ for, if the person be present when the act is done, then he is a principal.” Lord Hale says, misprision of felony is the concealment of a felony which a man knows but never consented to ; for if he consented, he is either principal or accessory. These authorities show, that per-, sons consenting, procuring, or contriving, come within the words, aid and command; and to command is not less strong than to abet.
*64 Seawéll, J.
This cáse comes up upon a motion for a New Trial, grounded upon a supposed misdirection of the presiding.Judge ; who stated to the Jury, that if they believed the facts to have been as related by the witness Deans, the Prisoners were both guilty of the charges pe-cified in the indictment; and that the Judge directed the Jury, that the agency which Lovei took in assisting Deans after his receiving the slave, in carrying them to Smith-field, was such an aiding, abetting, and consenting, as made him principal and equally guiíty with Éarna. And it has been insisted, for the Prisoners, that the receiving of the slaves and caffying them to Smithfeld by Deans, being by the consent Of the owner; and the agency in that respect by Lovet, being by- the consent oi Deans, who is to be considered as the agent of the owner; that nothing which Lovet did in that particular, can be said to be done invito domino, and consequently can amount to neither larceny or seduction. And I think so too ; and in that respect, differ from the presiding Judge. But to me it is clear, that as it appears that both the persons brought the slave to the same place where he and the others were delivered ; and that being in execution of a plan completely matured, without the knowledge of the owner ; and to which plan both persons were equally privy, and in the performance of which they appear to havé been joint actors ; that all the circumstances taken together, they constitute a complete seduction and larceny ; and if the Jury did believe them, they were well warranted in finding both Defendants guilty. Had the Charge of the Judge, therefore, been cónfinedio this part of the transaction, I should have been well Satisfied with it, and the verdict also ; but as it is impossible for me to say, \Vhether the J ury found Lovet guilty upon this part of the evidence, or upon that which related to his conduct after the delivery to Deans, I am constrained, though reluctantly, to say, that, on that account, and that only, the very *65 diet as to Lovet, must be set aside, and a New Tríál granted.
I cannot, therefore, subscribe to the Opinion of the Chief Justice, who holds, that the finding as to Barná was right, but that Lovet, on account of the part he acted after the delivery to Deans, was aiding, abetting, and consenting, and should, therefore, have been found guilty as a principal in the second degree; for I understand the case expressly finds, that both the Prisoners knew the slaves to be runaway and to belong to Pender: and it appears also, that Lovet was privy to the plan, for he informed Deans, he was to go with him, with the slaves j and though Lovet was not at M'Kmne's mill where the project was finally completed, yet he Was the messenger by whom Barna was requested to attend ; and at the time and place the slaves were to be delivered, Lovet there appears equally engaged with Barna ; and the excuse they allege for not being able to get the slaves further, makes it impossible, to my view, that Lovet, so far, may be considered as an honest agent. On the other hand, I am incapable of discovering any difference between the agency of the Prisoners in this part of the transaction* It may be, and is probably so, that Lovet being (as I understand) the youngest brother, was stimulated and induced to act by the means or advice of Barna ; but that he did act, apd equally participated with Barna, in both the larceny and the seduction, I cannot doubt about. And if Lovet's conduct is to be considered in the light of an honest agent previous to the delivery made to Deans, there does not appear a particle of evidence to criminate him afterwards ; for, in no part of the case does it appear that he was at any time informed of the mistake he was under: this view of the castí therefore would lead to the entire acquittal of Lovet, and ought, as I conceive, with the same force, to acquit Barna. It is not necessarv for me to express any opinion upon the question raised in argu* *66 rtieiif, Whether principals in the second degree be 0T3ste$ or not of clergy, as my opinion for a New Trial ⅛ found* e(j on a different reason; but if it was, I am very far from being satisfied that such principal is not ousted by the Act of Assembly in this case. The rule laid down by law writers, admits of a distinction between cases where clergy is taken away from the offence and where from offenders under particular circumstances. The Act declares, “That if any person shall hereafter.steal, or shall by violence, seduction, or any other means take, or convey away any slave or slaves, the property of another, with intention to sell or dispose of to another, or appropriate to their own use such slave or slaves, and being thereof lawfully convicted &c. shall be adjudged guilty of felony and suffer death without benefit of clergy.” Now a slave being goods and chattels, was at all dmes capable of being the subject of larceny, and the Legislature having ousted those whG should be convicted thereof generally, and not confining it to a particular kind, or a larceny of a slave under particular circumstances, it would therefore seem to extend to all those who, in judgment of Latí), make principals, whether of the first or second degree. And it is this distinction which distinguishes murder and rape and the privately stealing from the person, for in the latter case, the statute only ousts the clergy when the stealing was of a particular kind or under particular circumstances; so in the case of stabbing; so in the case of robbery in dwelling houses; in all which instances, the Legislature having only taken away clergy against those who should be guilty of the offence under' ¿hose circumstances, it extends to no others ; and in the case of new felonies, the same rule must necessarily apply.* cases Qf múrder, rape, robbery, and burglary, the statute of Edw. 6, declares, “ that no péf son that hath been or shall be convicted of murder of malice prepense, Or of robbing any one in or near the highway, shall b’é *67 admitted to have his clergy and the statute of Elizabeth declares, that if any person shall be found guilty of rape, he shall suffer death without benefit of clergy ; in all these cases, the Courts have uniformly held, that persons, “ convicted’’’’ of murder or robbery ijear the highway Stc.or persons “found guilty" of rape, whether principals of the first or second degree, were ousted.* Our Act of Assembly has not selected any particular kind of stealing of slayes, for the words, u vvith intention to sell, or dispose of to another, or appropriate to their own use,” if they necessarily do relate to the word steal, are only such circumstances as must appear in every larceny, namely, causa lucri: and like laying murder with malice pre-pense as the statute of Edward; for in the hypothetical case put at the bar, of a taking and carrying with intent to liberate, if such was the motive of taking, I should have no difficulty jn saying it was no felony, any more than if one individual throvys his neighbour’s property in a pit, or in any other manner destroys it. Such cases might be trespasses, or what in modern times have acquired the denomination of malicious mischief, but they are hot felonious. The result, therefore, seems to me this, that as to so much of t,he act as relates to a stealing of. slaves, the ousting of the clergy is general or in other words, applies to the offence, which then will include principals of every denomination, who before the passing of the Act were liable to be convicted as such; and that it has not confined the exemption of clergy to offenders of a particular class. These are but my impressions, occasioned more by general reading than, from any particular examination of this case ; and such as were hinted to the Counsel in the course of the argument. As to Barna, Í see no reason for disturbing the verdict in relation to him ; and in respect to the objection that the slave was a runaway, that point was expressly determined in the case of the State v. Davis, in this Court, and I am well *68 satisfied with the decision ; as to what relates to all the r objections, I think they are altogether insufficient, and that the rule must be discharged.
Judges Hall and Ruffin concurred in this opinion | Daniel, J. having presided, and Lowrie, J. absent.

 Foster 121.

 2 Hawk P. C. 342.

 1 Hale P. C 329. Foster 356

 Cro. Car. 473

 1 Hale 427.

 Leech 9.

 2 East 659.

 State v. Hall 1799.

 2 East 743.

 Johns. Dict.

 Foster’s Cro. Law 355-6.

Fost. Cro. L. 357.